## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHARLES WILLIAMS, | |
| Plaintiff, | Civil Action No. _____ |
| v. | |
| MDC PARTNERS INC., MARK J. PENN, CHARLENE BARSHEFSKY, ASHA DANIERE, BRADLEY J. GROSS, WADE OOSTERMAN, DESIRÉE ROGERS, and IRWIN D. SIMON, | **COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934** |
| Defendants, | **JURY TRIAL DEMAND** |

Plaintiff Charles Williams ("Plaintiff") alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

### NATURE OF THE ACTION

1.      Plaintiff brings this action against MDC Partners Inc. ("MDC Partners" or the "Company") and MDC Partners's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, arising out of the Board's attempt to sell the Company to Stagwell Media LP ("Stagwell").

2.      Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading registration statement to be filed with the Securities and Exchange Commission ("SEC") on February 8, 2021. Amended registration statements were filed on March 30, 2021 and April 22, 2021, with the latest amended registration statement filed on April 30, 2021 (the "S-4"). The S-4 recommends that MDC Partners

stockholders vote in favor of a proposed transaction (the "Proposed Transaction") whereby MDC Partners is acquired by Stagwell. The Proposed Transaction was first disclosed on December 21, 2020, when MDC Partners and Stagwell announced that they had entered into a definitive merger agreement (the "Merger Agreement") pursuant to which MDC Partners will be converted into a limited liability company holding MDC Partners's operating assets, Stagwell's subsidiaries and Stagwell's operating businesses. MDC Partners will then be owned in part by Stagwell and in part by a new publicly-traded company. Current MDC stockholders will receive shares of the new company such that they will hold 26% of the new company (the "Merger Consideration").

3.      The S-4 is materially incomplete and contains misleading representations and information in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the S-4 contains materially incomplete and misleading information concerning the financial projections prepared by MDC Partners management, as well as the financial analyses conducted by Moelis & Company ("Moelis") and Canaccord Genuity Corp. ("Canaccord Genuity"), MDC Partners's financial advisors.

4.      For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction, including filing an amendment to the S-4 with the SEC or otherwise causing an amendment to the S-4 to be disseminated to MDC Partners's stockholders, unless and until the material information discussed below is included in any such amendment or otherwise disseminated to MDC Partners's stockholders. In the event the Proposed Transaction is consummated without the material omissions referenced below being remedied, Plaintiff seeks to recover damages resulting from the Defendants' violations.

**PARTIES**

5.      Plaintiff is, and has been at all relevant times, the owner of shares of common stock of MDC Partners.

6.      Defendant MDC Partners is a corporation organized and existing under the laws of Canada. The Company's principal executive offices are located at One World Trade Center, Floor 65, New York, NY 10007. MDC Partners common stock trades on NASDAQ under the ticker symbol "MDCA."

7.      Defendant Mark J. Penn has been CEO and a director of the Company since 2019.

8.      Defendant Charlene Barshefsky has been a director of the Company since 2019.

9.      Defendant Asha Daniere has been a director of the Company since May 2020.

10.     Defendant Bradley J. Gross has been a director of the Company since 2017.

11.     Defendant Wade Oosterman has been a director of the Company since January 2020.

12.     Defendant Desirée Rogers has been a director of the Company since 2018.

13.     Defendant Irwin D. Simon has been a director of the Company since 2013.

14.     Defendants Penn, Barshefsky, Daniere, Gross, Oosterman, Rogers and Simon are collectively referred to herein as the "Board" or "Individual Defendants."

15.     Non-party Stagwell Media LP is a private equity firm. Stagwell's principal executive offices are located at 1808 Eye Street, Floor 6, Washington, D.C. 20006.

**JURISDICTION AND VENUE**

16.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

17.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

18.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) a significant amount of the conduct at issue took place and had an effect in this District; and (ii) MDC Partners has its principal executive offices located in this District.

## FURTHER SUBSTANTIVE ALLEGATIONS

### A.  Background of the Company and the Proposed Transaction

19.     MDC Partners provides marketing, communications, and consulting services to a wide array of clients. The Company provides these services through a network of partner agencies that are focused on specific locations and/or disciplines.

20.     On December 21, 2020, the Company entered into the Merger Agreement with Stagwell.

21.     According to the press release issued on December 21, 2020 announcing the Proposed Transaction:

### MDC Partners and Stagwell to Combine, Creating Transformative Global Marketing Network

- *Combined company poised to deliver meaningful shareholder value creation, accelerated growth and enhanced services to clients.*

- *Combination unleashes the power of talent and technology around the world to create a top ten global integrated marketing services company that will provide the best-in-class solutions that marketers need to thrive in today's marketplace.*

- *More than triples the contribution of high-growth digital services and expertise compared to MDC standalone.*

4

- *Existing MDC common shareholders (including Stagwell) will receive 26% of the common equity of the combined company and Stagwell will receive share consideration equal to 74% (excluding Stagwell's pre-transaction holdings of MDC common shares and without giving effect to any conversion of outstanding preference shares).*

- *Complementary offerings have the potential to produce 5%+ annual organic revenue growth, decrease net leverage from 4.2x to 3.4x and deliver over $200 million of pro forma cash generation in 2021.*

- *Run-rate cost savings of ~$30 million from operational efficiencies and integrated services over time, with 90% expected to be achieved within 24 months.*

- *Plans to invest in expanding services across global markets and in expanded digital marketing products.*

- *MDC Board of Directors has approved the Transaction, following a recommendation by a Special Committee of independent directors.*

**New York, NY – December 21, 2020** MDC Partners Inc. ("MDC") (NASDAQ: MDCA) and Stagwell Media LP ("Stagwell") announced today that they have entered into a definitive transaction agreement (the "Transaction Agreement") to combine their respective businesses, uniting the award-winning talent of MDC with the advanced technology platform of Stagwell to create the transformative marketing company today's marketplace demands (the "Transaction"). Together, the companies will significantly expand their range of best-in-class capabilities, depth of expertise, and geographic footprint to deliver expanded value to clients, and meaningfully accelerate the combined company's growth.

"This is a new day for MDC and Stagwell," said Mark Penn, Chairman and CEO of MDC Partners, and Managing Partner of The Stagwell Group. "Together, they unleash precisely the right talent and technology to create a transformative marketing services company offering scaled Creative Performance. MDC is celebrated for bringing award-winning creative firepower to the world's leading and most ambitious companies, and Stagwell has been built with deep and sophisticated technology at its core. Unencumbered by legacy structures or assets, the combined company will have the integrated, modern offerings marketers deserve, and the resources to invest meaningfully in our global capabilities, our talent, and our clients' future."

The combined company will provide the balance of integrated solutions that modern marketers need to succeed, including second-to-none creativity and communications, scaled media and data capabilities, superior consumer insights, technology development and innovation, and digital transformation. Without giving effect to any conversion of outstanding preference shares, the pre-Transaction holders of MDC Class A and Class B shares ("MDC Shares") would receive 26% of the common equity of the combined company and Stagwell would receive share consideration equal to 74% of the common equity of the combined

company (excluding Stagwell's ownership in the combined company derived from its ownership of pre-Transaction MDC Shares), each on a pro forma basis. Stagwell and its affiliates are expected to hold approximately 79% of the common equity of the combined company immediately after closing of the Transaction (assuming no conversion of outstanding preference shares of MDC). Further details on the combination and the business offerings of MDC and Stagwell can be found in our investor presentation at www.mdc-partners.com/investors and accompanying video at www.mdc-partners.com.

With over 8,600 employees across 23 countries, the combined company will be ideally suited to lead marketers into the future, with deepened expertise in digital services, and more than tripling high-growth digital offerings to 32% of the combined business. With a track record of collaboration across disciplines bringing the right technology solutions to its blue-chip clients' business and marketing challenges, the combined company's network also brings experience in building and developing its own proprietary digital products to solve for gaps in the marketing ecosystem, which together could generate $90 - $150 million annual top-line benefit over time.

"Having thoroughly evaluated the Transaction and having received the recommendation of the Special Committee, which, in close collaboration with its independent legal and financial advisors, met extensively to assess, evaluate and negotiate the Transaction - we are pleased to have reached a definitive agreement that maximizes growth potential for MDC and opportunity for all stakeholders," said Irwin D. Simon, Presiding Director of MDC Partners and Chair of the Special Committee of MDC Partners' Board of Directors. "MDC boasts a rich history and culture of entrepreneurship while innovating to solve for core client and industry needs. Combining these two companies will build on that legacy to create an even stronger industry leader."

**Highly Compelling Strategic Rationale**

In contrast to MDC remaining a standalone company, the highly compelling combination creates a leading marketing services company with enhanced global scale and broadened premium capabilities highlighted by the following strategic rationale:

**Strategic Advantages of Combined Company:**

- *Targeting 5%+ annual organic growth, driven by 10-15% digital marketing growth and complementary capabilities, and 9%+ total annual revenue growth including new products and acquisitions*
- *Media and data operation managing $4.4 billion in media spend, bringing added scale and sophistication*
- *New revenue streams from expanded digital and technology products*

- *More than tripling high-growth digital offerings, with 32% of business in digital services*
- *Enhanced global scale across 23 countries*
- *Leadership team with experience in value creation in marketing services*
- *Expanded opportunities for high-performing network talent*

**Financial Strength:**

- *Run-rate savings of ~$30 million from operational synergies over time, with ~90% expected to be achieved within 24 months*
- *Enhanced capital structure, decreasing net leverage ratio from 4.2x to 3.4x, after giving full effect to run-rate operational synergies*
- *Over $200m of pro forma cash generation in 2021*
- *Target to grow to $3 billion+ in revenue in 2025, including acquisitions, organic growth and new products*

**Governance and Management**

Mark Penn, current CEO and Chairman of MDC and Managing Partner of Stagwell, will continue as CEO and Chairman of the combined company. The management team for the combined company will consist of existing executives from both MDC and Stagwell.

Pursuant to the Transaction Agreement, the board of directors of the combined company will consist of nine members, including Mark Penn and Bradley Gross. Three independent directors on the Board will continue as directors in the combined company and the combined company shall cause such directors to be nominated at the company's next two annual meetings; Stagwell will be entitled to designate the other four directors to serve on the Board.

The combined company will remain headquartered in New York, NY and will maintain a significant presence in Washington D.C.

**Transaction Structure**

Under the terms of the Transaction Agreement, the Transaction will be effected using an "Up-C" partnership structure, to permit additional basis step-up and depreciation for the combined company. Pursuant to the Transaction, MDC will be converted into a limited liability company that holds both Stagwell's subsidiaries and MDC's operating assets and Stagwell will contribute its operating businesses to MDC as so converted. The limited liability company will be owned in part by a newly-formed NASDAQ-listed company incorporated in Delaware ("New MDC"), and in part by Stagwell. On a pro forma basis, without giving effect to any conversion of outstanding preference shares of MDC, the pre-Transaction holders of MDC Shares would own 26% of the common equity of New MDC and Stagwell shareholders would be issued shares of a new Class C series equivalent to 74% of

the common equity of New MDC and exchangeable into shares of New MDC Class A Shares on a one-for-one basis at Stagwell's election.

Additionally, MDC and Stagwell will enter into a tax receivable agreement pursuant to which New MDC and Stagwell will share in the economic benefits of tax attributes resulting from Stagwell's exchanges of "Up-C" units.

Concurrently with the execution of the Transaction Agreement, MDC and an affiliate of Goldman Sachs, as sole holder, agreed to renegotiate the terms of MDC's issued and outstanding Series 4 convertible preference shares (the "Goldman Amendments"). The revised terms reduce the conversion price from $7.42 to $5.00 and extend accretion for two years at a reduced rate of 6%. In connection with the Transaction, an affiliate of Goldman Sachs, as holder, will have the right to redeem up to $30 million of its preference shares in exchange for a $25 million subordinated note or loan with a 3 year maturity (i.e., exchange at an approximately 17% discount to face value). The $25 million note or loan will accrue interest at 8.0% per annum and is pre-payable any time at par without penalty.

Subject to market conditions and other factors, MDC intends to conduct a consent solicitation for certain waivers and amendments to its 6.50% senior notes due 2024 (the "Notes") necessary to close the Transaction.  MDC has entered into consent and support agreements with holders of more than 50% of the aggregate principal amount of its Notes to consent to the necessary waivers and amendments in the consent solicitation.

**B.  The Materially Incomplete and Misleading S-4**

22.     The Individual Defendants must disclose all material information regarding the Proposed Transaction to Plaintiff and other MDC Partners stockholders so that they can make a fully informed decision whether to vote in favor of the Proposed Transaction.

23.     On April 30, 2021, Defendants filed the S-4 with the SEC. The purpose of the S-4 is, inter alia, to provide the Company's stockholders with all material information necessary for them to make an informed decision on whether to vote in favor of the Proposed Transaction. However, significant and material facts were not provided to Plaintiff. Without such information, Plaintiff and the other MDC Partners stockholders cannot make a fully informed decision concerning whether to vote in favor of the Proposed Transaction.

### *Materially Misleading Statements/Omissions Regarding the Management-Prepared Financial Forecasts*

24.     The S-4 discloses management-prepared financial projections for the Company which are materially misleading. The S-4 indicates that in connection with the rendering of Moelis's fairness opinion, Moelis reviewed "certain internal information relating to the business, earnings, cash flow, assets, liabilities and prospects" of Stagwell and MDC Partners which included the "MDC Management Forecasts." In connection with the rendering of its fairness opinion, Canaccord Genuity reviewed the "MDC Management Forecasts." Accordingly, the S-4 should have, but failed to, provide certain information in the projections that MDC Partners's management provided to the Board, as well as Moelis and Canaccord Genuity.

25.     Notably, Defendants failed to disclose the line items used to calculate unlevered free cash flow and the line items used to calculate adjusted EBITDA for both MDC Partners and Stagwell. The S-4 further fails to disclose the projections reviewed in August 2020, and how those were modified or differ from the projections disclosed in the S-4. This omitted information is necessary for Plaintiff and the other MDC Partners stockholders to make an informed decision on whether to vote in favor of the Proposed Transaction.

### *Materially Incomplete and Misleading Disclosures Concerning Moelis's and Canaccord Genuity's Financial Analyses*

26.     With respect to Moelis's *MDC DCF Analysis,* the S-4 fails to disclose the terminal value of MDC Partners. The S-4 also fails to disclose the basis for selecting discount rates of 9.75% to 12.00% and perpetuity growth rates of 1.0% to 2.0%. The S-4 further fails to disclose the estimated present values of unlevered free cash flows as of December 31, 2020 for the calendar years ending December 31, 2021 through December 31, 2025, as well as the terminal year unlevered free cash flow.

27.     With respect to Moelis's *Stagwell DCF Analysis,* the S-4 fails to disclose the

terminal value of Stagwell's Subject Entities. The S-4 also fails to disclose the basis for selecting discount rates of 7.75% to 9.50%, as well as perpetuity growth rates of 2.0% to 3.0%. The S-4 further fails to disclose the estimated present values of unlevered free cash flows as of December 31, 2020 for the calendar years ending December 31, 2021 through December 31, 2025, as well as the terminal year unlevered free cash flow.

28.     With respect to Moelis's *Selected Publicly Traded Companies Analysis*, the S-4 fails to disclose the transactions utilized for the analysis, as well as the individual multiples for each transaction selected.

29.     With respect to Moelis's *DCF-Based Has/Gets Analysis,* the S-4 fails to disclose the basis for selecting discount rates of 7.75% to 9.50%, as well as perpetuity growth rates of 1.0% to 3.0%. The S-4 further fails to disclose the estimated present values of unlevered free cash flows as of December 31, 2020 for the calendar years ending December 31, 2021 through December 31, 2025, the estimated terminal values, as well as the terminal year unlevered free cash flow.

30.     With respect to Canaccord Genuity's *Discounted Cash Flow Analysis* for MDC Partners*,* the S-4 fails to disclose the terminal value. Similarly, with respect to the *Discounted Cash Flow Analysis* for Stagwell, the S-4 fails to disclose the terminal value.

31.     The S-4 states that in the two years prior to rendering its fairness opinion, Moelis had also performed services that involved Goldman Sachs affiliates. The S-4 does not disclose the fees earned by Moelis from the services provided to Goldman Sachs affiliates.

32.     The Individual Defendants knew or recklessly disregarded that the S-4 omits the material information concerning the Proposed Transaction and contains the materially incomplete and misleading information discussed above.

33.     Specifically, the Individual Defendants undoubtedly reviewed the contents of the

S-4 before it was filed with the SEC. Indeed, as directors of the Company, they were required to do so. The Individual Defendants thus knew or recklessly disregarded that the S-4 omits the material information referenced above and contains the incomplete and misleading information referenced above.

34.     Further, the S-4 indicates that on December 21, 2020, Moelis and Canaccord Genuity reviewed with the MDC Special Committee their financial analyses of the Proposed Transaction and delivered to the Board their oral opinions, which were confirmed by delivery of written opinions of the same date, to the effect that the Proposed Transaction was fair, from a financial point of view, to MDC Partners stockholders. Accordingly, the Individual Defendants undoubtedly reviewed or were presented with the material information concerning Moelis's and Canaccord Genuity's financial analyses which has been omitted from the S-4, and thus knew or should have known that such information has been omitted.

35.     Plaintiff is immediately threatened by the wrongs complained of herein, and lacks an adequate remedy at law. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that they and the Company's stockholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

### COUNT I

**Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9**

36.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

37.     Defendants have filed the S-4 with the SEC with the intention of soliciting MDC Partners stockholder support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the S-4, which fails to provide the material

information referenced above.

38.     In so doing, Defendants made materially incomplete and misleading statements and/or omitted material information necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors of MDC Partners, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).

39.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that such communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

40.     Specifically, and as detailed above, the S-4 violates Section 14(a) and Rule 14a-9 because it omits material facts concerning management's financial projections and the value of MDC Partners shares and the financial analyses performed by Moelis and Canaccord Genuity in support of their fairness opinions.

41.     Moreover, in the exercise of reasonable care, the Individual Defendants knew or should have known that the S-4 is materially misleading and omits material information that is necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the S-4 states that Moelis and Canaccord Genuity reviewed and discussed their financial analyses with the MDC Special Committee on December 21, 2020, and further states that the Board, vis-à-vis the MDC Special Committee, relied upon Moelis's and Canaccord Genuity's financial analyses and fairness opinions in connection with

approving the Proposed Transaction. The Individual Defendants knew or should have known that the material information identified above has been omitted from the S-4, rendering the sections of the S-4 identified above to be materially incomplete and misleading.

42.     The misrepresentations and omissions in the S-4 are material to Plaintiff and the other MDC Partners stockholders, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

43.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

44.     The Individual Defendants acted as controlling persons of MDC Partners within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of MDC Partners and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the S-4 filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

45.     Each of the Individual Defendants was provided with or had unlimited access to copies of the S-4 and other statements alleged by Plaintiff to be misleading prior to the time the S-

4 was filed with the SEC and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

46.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The S-4 at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the S-4.

47.     In addition, as the S-4 sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The S-4 purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

48.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

49.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A.      Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from filing any further amendments to the S-4 with the SEC or otherwise disseminating an amendment to the S-4 to MDC Partners stockholders unless and until Defendants agree to include the material information identified above in any such amendment;

B.      Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the S-4;

C.      In the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff rescissory damages;

D.      Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

E.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

F.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: May 7, 2021

**ROWLEY LAW PLLC**

*S/ Shane T. Rowley*

Shane T. Rowley (SR-0740)
Danielle Rowland Lindahl
50 Main Street, Suite 1000
White Plains, NY 10606
Tel: (914) 400-1920
Fax: (914) 301-3514
Email: srowley@rowleylawpllc.com
Email: drl@rowleylawpllc.com

*Attorneys for Plaintiff*

16